UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| KARL PAUL VOSSBRINCK, | : | CIVIL CASE NUMBER |
| --- | --- | --- |
| *Plaintiff*, | : | |
| | : | 3:17-cv-00372 (VLB) |
| v. | : | |
| | : | March 14, 2018 |
| ECKERT SEAMANS CHERIN, | : | |
| AND MELLOT, LLC | : | |
| *Defendant.* | : | |

## MEMORANDUM OF DECISION ON MOTION TO DISMISS [DKT. 8]

Plaintiff Karl Paul Vossbrinck ("Plaintiff" or "Mr. Vossbrinck"), brings this action against Defendant Eckert Seamans Cherin and Mellot, LLC ("Defendant" or "Eckert Seamans") for claims of replevin under Conn. Gen. Stat. § 52-515, civil theft under Conn. Gen. Stat. § 52-564, common law conversion, and deprivation of rights in violation of 42 U.S.C. § 1983. The case was initially filed in Connecticut state court but was properly removed under both diversity and federal question jurisdiction. *See* Dkt. 1-1 (Notice of Removal) at 4]. Defendants have moved to dismiss the case in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) on the basis that Plaintiff's claims are time-barred and that the Plaintiff has failed to adequately plead each claim. For the reasons that follow, Defendant's Motion to Dismiss is GRANTED.

I. Background

The following facts and allegations are taken from the Complaint and assumed to be true for the purpose of this motion. This action arises out of a foreclosure of a mortgage on Plaintiff's home brought by Accredited Home Lenders, LLC ("Accredited") and Deutsche Bank National Trust Company, as

1

Indenture Trustee, on behalf of The Holders Of The Accredited Mortgage Loan Trust 2005-4 Asset Backed Notes the successor in title to the mortgage and note. *See Accredited Home Lenders, Inc. (Deutsche Bank) v. Vossbrinck*, judicial district of Waterbury, Docket No. CV-08-5007144-S; *see also Vossbrinck v. Accredited Home Lenders, Inc.*, No. CV125016343S, 2016 WL 3266384, at *1 (Conn. Super. Ct. May 26, 2016) (recognizing successor in title). Defendant Eckert Seamans is the law firm that represented Accredited in the foreclosure and Attorney Geraldine Cheverko ("Attorney Cheverko") is associated with the law firm.

On June 21, 2011, an Order of Strict Foreclosure was granted against Mr. Vossbrinck and a law date was set for August 23, 2011. [Dkt. 1-1 (Compl.) ¶ 1]. The Complaint does not allege that Mr. Vossbrinck redeemed legal title by the law day[1] or vacated the premises. *See id.* ¶¶ 1-2. An Order of Ejectment was issued on August 13, 2012. *Id.* ¶ 2. Attorney Cheverko of Eckert Seamans "was in contact with" Ms. Estelle Stevenson of Prudential Real Estate ("Ms. Stevenson"), Marshal Brian Hobart, ("Marshal Hobart") and Select Portfolio Servicing and Safeguard Properties. *Id.* ¶ 3. Plaintiff claims Attorney Cheverko instructed these individuals to eject Mr. Vossbrinck from the foreclosed premises. *Id.*

On or about October 2, 2012, Marshal Hobart appeared at Plaintiff's house, and instructed him to collect his belongings within an hour and vacate the premises. *Id.* ¶ 4-5. Marshal Hobart and Officer Tierney of the Southbury Police

---

[1] As a result of failing to redeem legal title, unconditional title to the property passed to Accredited, which gave Accredited the right to possession. *Sovereign Bank v. Licata*, 178 Conn. App. 82, 97 (Conn. App. Ct. 2017) (quoting *City Lumber Co. of Bridgeport, Inc. v. Murphy*, 120 Conn. 16, 25 (1935).

2

Department instructed Mr. Vossbrinck he could not return under any circumstances. *Id.* ¶ 4-5. Attorneys Julie Beth Vacek and Dorothy Davis, both of Eckert Seamans, were present during the ejectment. *Id.* ¶ 5. The ejectment lasted about five days and Mr. Vossbrinck vacated the premises by the end of the week. *Id.* ¶ 6.

The Complaint alleges Plaintiff did not remove all of his belongings from the premises at the time he vacated, and among the items he left were photographs, a commercial range, a washing machine and dryer, a full kitchen in two downstairs guest apartments, and a wood burning stove. *Id.* ¶ 16. Plaintiff's Objection to the Motion to Dismiss includes photographs of some of the belongings he left behind. [Dkt. 13-1 (Opp'n Ex. 1, Photographs)]. Those photographs depict the two kitchens which appear to be installed on the premises, an exercise machine, cord wood, two metal shelf systems containing cleaning products and other assorted consumer items, a furnace, a hot water heater, and an oil tank. *Id.* Also depicted is a storage tent located on the grounds of the premises constructed on a concrete block linear foundation. *Id.* Under the tent was a pallet, a milk crate, and assorted items lying in disarray on the bare ground. Mr. Vossbrinck alleges the intrinsic or replacement value of Plaintiff's belongings remaining after the ejectment "was in excess of $200,000." [Dkt. 1-1 ¶ 18].

Plaintiff subsequently learned that Marshal Hobart had not properly stored Plaintiff's belongings in a town facility, as mandated by Conn. Gen. Stat. § 49-22, but rather in several different locations. *Id.* ¶ 7. Marshal Hobart also failed to

notify the police and Plaintiff where he was taking Plaintiff's belongings as required by law and did not provide Plaintiff with an inventory or the location of his belongings. *Id.* ¶¶ 8, 10.

Over a period of three weeks, Plaintiff contacted Marshal Hobart, Attorney Cheverko, and Ms. Stevenson and they "refused to tell Plaintiff where his belongings were" located. *Id.* ¶ 11. Plaintiff ultimately learned where his belongings were located, but he discovered many items were missing when he retrieved them. *Id*. ¶¶ 12-13. One month following Plaintiff's October 2012 ejectment, Plaintiff learned that Marshal Hobart left approximately half of Plaintiff's belongings at the premises. *Id*. ¶ 14. Plaintiff did not demand his property, but rather left his belongings on the premises, assuming they would be secure while he appealed the foreclosure and his friend was residing in an apartment on the premises. Id.

Mr. Vossbrinck left his property on the premises for two more years until "the second quarter of 2014" at which point Attorney Cheverko "had the remaining entirety of Plaintiff's personal property removed from all exterior areas of Plaintiff's home and liquidated . . . without any notification to Plaintiff whatsoever." *Id.* ¶ 15. He alleges this liquidation took place without a court order and while a *lis pendens* existed on his property. *Id.*

Mr. Vossbrinck alleges that on June 6, 2014, Ms. Stevenson listed Plaintiff's belongings for sale for $363,600.00, at which time Plaintiff's belongings described above were on the premises. *Id.* ¶ 16. After the premise was listed for sale, "upon Geraldine Cheverko's instructions, the entire inside contents of Plaintiff's

4

home were removed." *Id.*¶17. Plaintiff admits in his Complaint that "[t[hese items would normally be left in a house listed for sale." *Id.*

II. <u>Legal Standard</u>

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'wellpleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482

5

F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

"A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89 (2007)). The Court interprets a *pro se* complaint to raise the strongest arguments that it suggests. *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

III. <u>Analysis</u>

Defendants move to dismiss this case in its entirety on the basis that all claims are time-barred and otherwise fail to state a claim upon which relief may be granted. Plaintiff withdraws his claims for replevin and deprivation of rights under 42 U.S.C. § 1983. *See* [Dkt. 13 at 6]. Plaintiff argues the claims for conversion and civil theft were timely filed because the conduct occurred after ejectment when Plaintiff's goods were liquidated. The Court will now address Defendant's liability for the ejectment, the statute of limitations issue, and the allegations of pleadings.

    A. *<u>Defendant's Liability for the Ejectment</u>*

As an initial matter, Plaintiff has not properly alleged Defendant is liable for his ejectment in October 2012. On June 21, 2011, the state court issued a

judgment of strict foreclosure and designated the law day as August 23, 2011. [Dkt. 1-1 ¶ 1]. When the law day passes and a judgment of strict foreclosure enters in favor of the mortgagee, the mortgagor no longer has title to or any interest in the real property, and thus no right to remain in occupancy. *See Provident Bank v. Lewitt*, 84 Conn. App. 204, 210 (Conn. App. Ct. 2004), *cert denied*, 271 Conn. 924 (2004). Nonetheless Plaintiff did not quit possession of the premises and therefore on August 13, 2012 the state court issued an order of ejectment on August 13, 2012. [Dkt. 1-1 ¶ 2].

Ejectment is governed by state law and allows a mortgagee to whom ownership of real property is conveyed by the court through a strict foreclosure to obtain a court order authorizing the ejectment of occupants of the real property. Conn. Gen. Stat. § 49-22. The statute tasks the state marshal with executing the ejectment. Conn. Gen. Stat. § 49-22(b). Section 49-22 provides that "[t]he officer shall eject the person . . . in possession and may remove such person's possessions and personal effects and deliver such possessions and effects to the place of storage designated by the chief executive officer of the town for such purposes." Conn. Gen. Stat. § 49-22(a). Part of the state marshal's responsibility is to make "reasonable efforts to locate and notify the person . . . in possession of the date and time such ejectment is to take place and of the possibility of a sale" of the person's items. *Id.* The state marshal is required to give the possessor of the property "clear instructions as to how and where such person . . . may reclaim any possessions and personal effects removed and stored. . . ." *Id.* Possessions and personal effects removed by the state marshal

7

must be delivered to "the designated place of storage" and the chief executive officer is to sell the items at public auction within 15 days of ejectment "after using reasonable efforts to locate and notify such person of the sale and after posting notice of the sale" pursuant to the statute. Conn. Gen. Stat. § 49-22(c). The ejected person is entitled to the proceeds, but if he does not reclaim them within 30 days then the chief executive officer shall give the proceeds to the town treasury. *Id.*

The ejectment statute does not impose any duty upon the mortgagee or its attorney in effectuating the ejectment. *Id.*; *see also* [Dkt. 8-6 (Mot. Dismiss) at 8]. Here, Defendant Eckert Seamans is the law firm that represented the original mortgagee, Accredited, and Attorney Cheverko is associated with the firm. [Dkt. 1-1 at 1]; *see Vossbrinck v. Accredited Home Lenders, Inc.*, 2016 WL 3266384, at *1 (citing *Accredited Home Lenders, Inc. v. Vossbrinck*, Superior Court, judicial district of Waterbury, Docket No. CV-08-05007144-S). Plaintiff has failed to show that Eckert Seamans owed him any duty to ensure that the ejectment comported with state law.

Plaintiff alleges he had filed a notice of *lis pendens* on the land records. A notice of *lis pendens* merely "put[s] potential buyers of the real estate and creditors of its owners on notice that the real estate may be subject to pending adverse interests that may affect the title or right to the property." *Garcia v. Brooks Street Associates*, 209 Conn. 15, 22 (1988). An individual who does not have an interest or right in the property cannot gain practical relief from such a notice. *Id.*; *Accredited Home Lenders v. Vossbrinck*, No. CV085007144, 2012 WL

5519424, at *6 (Conn. Super. Ct. Oct. 19, 2012) ("For example, had there been a sale of the property after the judgment of strict foreclosure entered and the running of the law day, it would have no legal effect on title due to the operation of a lis pendens."). Eckert Seamans is not liable for enlisting others to remove the property in 2014.

### B. *Statute of Limitations*

The statute of limitations periods for both civil theft and conversion are governed by Conn. Gen. Stat. § 52-577, the statute applicable to torts. *See Certain Underwriters at Lloyd's, London v. Cooperman*, 289 Conn. 383, 408 (2008). Under Conn. Gen. Stat. § 52-577, any "action founded upon a tort" must be brought "within three years from the date of the act or omission complained of." This statute is occurrence-based, meaning the time period begins to run on the date the act occurs; the accrual period cannot be delayed to after the cause of action accrues or the injury occurs. *See Fichera v. Mine Hill Corp.*, 207 Conn. 204, 212 (1988); *Certain Underwriters*, 289 Conn. at 408.

The Court first addresses the items removed during the ejectment. Notwithstanding the fact that Defendant Eckert Seamans is not liable for damage resulting from the ejectment in October 2012, the statute of limitations period also bars claims arising therefrom. As the act occurred in October 2012, the statute of limitations ran in October 2015 and Mr. Vossbrinck did not file this action until February 21, 2017. *See* [Dkt. 1]. He has not raised any equitable principles or stated any facts that would cause the Court to find the statute of limitations

should be tolled. Therefore, even if Defendant Eckert Seamans could have been held liable for the ejectment, the claims would have been time-barred.

With respect to the belongings left on the premises, the statute of limitations issue requires more nuanced analysis that is dependent upon the claims asserted. The Court will address the conversion claim and the civil theft claim separately.

   1.   *Conversion*

Conversion is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights." *Aetna Life & Cas. Co. v. Union Trust Co.*, 230 Conn. 779, 790 (1994) (citations omitted); *see Gilbert v. Walker*, 64 Conn. 390, 30 A. 132, 134 (1894) ("It is some unauthorized act, which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion, and to his harm."). There are two types of conversion, the first of which occurs where "possession of the allegedly converted goods is wrongful from the outset" and the second which "arises subsequent to an initial rightful possession." *Maroun v. Tarro*, 35 Conn. App. 391, 396 (Conn. App. Ct. 1994). Under the second class of conversion, a rightful possession may become wrongful in one of three ways: (1) "a wrongful detention," (2) "the exercise of an unauthorized dominion over the property," or (3) "a wrongful use of the

property." *Luciani v. Stop & Shop Cos., Inc.*, 15 Conn. App. 407, 410 (Conn. App. Ct. 1988). The parties do not specify which type of conversion applies.

Accredited took lawful title and right to possession of the premises when judgment entered and the law day passed. *See Licata*, 178 Conn. App. at 97 (where the passing of the law day renders foreclosure decree absolute, the right to redeem is terminated and the plaintiff has unconditional title to the property "with a consequent and accompanying right to possession"); Denis R. Caron, Geoffrey K. Milne, <u>Connecticut Foreclosures: An Attorney's Manual of Practice and Procedure (Vol. I)</u>, 626-27 (8th ed. 2018) ("If no defendant redeems in a strict foreclosure action, title becomes absolute in the plaintiff after the passage of the law days."). By effectuating the ejectment, Accredited lawfully took possession of the premises. The ejectment statute provides the state marshal "shall eject the person or persons in possession and *may* remove such person's possessions and personal effects . . . ." Conn. Gen. Stat. § 48-22(a) (emphasis added). The statute does not confer a duty on Accredited to remove or secure Plaintiff's belongings,[2] and accordingly Accredited came into rightful possession of the belongings that Plaintiff left on the premises after ejectment because Plaintiff intended to leave these items while litigation was pending. *See* [Dkt. 1-1 ¶ 14 (wherein Plaintiff left his personal belongings on the premises because he

---

[2] Indeed, <u>Connecticut Foreclosures</u> provides, "Although a foreclosing mortgagee or lienor, or a purchaser at a foreclosure sale, may have acquired absolute title to the property and a right to possession, it is important to recognize that such right does not extend to any personal property that the foreclosed owner may have allowed to remain on the premises." Caron, Milne, <u>supra</u>, at 657. Even when the "personalty may appear to be nothing more than abandoned waste or junk, the new owner may be acting at his peril in disposing of such material" because Conn. Gen. Stat. § 47a-43 gives an individual redress under some circumstances.

believed they "would be safe and secure until his pending appeal was decided")]. But it is of no moment when Accredited came into possession, because it is *Accredited's law firm*, Eckert Seamans, which is the Defendant in this action. To decide the moment at which Eckert Seaman's possession can be described as "wrongful," the Court must first determine when, if at all, Eckert Seamans came to possess Mr. Vossbrinck's personal belongings as contemplated under the law of conversion.

With respect to Eckert Seamans, the Complaint alleges that approximately 1.5–2 years after the ejectment Ms. Cheverko "had the remaining entirety of Plaintiff's personal property removed from all exterior areas of Plaintiff's home and liquidated same without any notification to Plaintiff whatsoever." [Dkt. 1 ¶ 15]. Mr. Vossbrinck explains in his opposition:

> The aforementioned personal property has never been returned and was <u>disposed of by ESCM</u>, <u>Ester Stevenson representing ESCM</u>, Ester Stevenson's employer Berkshire Hathaway Real Estate and Safeguard Properties and possibly more. Geraldine Cheverko then representing ESCM <u>authorized the removal and disposal of Plaintiff[']s property</u> while the subject of title [to the premises] was still under consideration and with no notice to Plaintiff whatsoever.

[Dkt. 13 at 6 of PDF (emphasis added)]. Mr. Vossbrinck contends Eckert Seamans "did indeed take possession of Plaintiff[']s property through Safeguard [P]roperties which Plaintiff through belief and fact know that said property was sold and/or stolen." [Dkt. 13 at 7 of PDF]. Even under a liberal reading of this language, the Complaint indicates Mr. Vossbrinck's personal belongings remained on the foreclosed-upon premises up until the moment the items were removed and transferred to Safeguard Properties' premises. The Complaint does

not allege, for example, that Attorney Cheverko or another Eckert Seamans employee personally removed Mr. Vossbrinck's personal belongings from the premises or that they stored the items on a location Eckert Seamans owned or leased. Indeed, Plaintiff argues in the alternative that his belongings were stolen and not sold by Attorney Cheverko. *Id.*

In *Maroun v. Tarro*, the Connecticut appellate court reversed and remanded a case where the jury awarded $45,000 to the substitute plaintiff for the alleged conversion of his used car. The plaintiff purchased a 1969 280 SE Mercedes Benz automobile from Newfield Motors, Inc. ("Newfield Motors") in 1986, and it was agreed Newfield Motors would renovate the car into a classic show car. *Maroun*, 351 Conn. App. at 393. The defendant in this case was Richard Tarro, who was a friend of Newfield Motors's owner, Kathleen Wallack, whose name appeared on the bill of sale, and who was known to spend "considerable time" at Newfield Motors (although he denied being an employee). *Id.* at 393-94. In 1987, the plaintiff was notified that Newfield Motors was closing and that cars on the property were being vandalized; Wallack informed the plaintiff's wife that the car was in storage at her residence and that work was continuing. *Id.* at 394. There existed evidence that the defendant and Wallack owned and occupied the property where the car was stored. *Id.* The plaintiff later received two parking tickets related to the Mercedes and after retrieving the car the plaintiff discovered that did not exist at the time of sale. He initiated a conversion action against the defendant, Mr. Tarro, for operating the vehicle without authority, and the jury

13

returned a favorable verdict. The appellate court ruled the lower court should have set aside the verdict and reasoned:

> The complaint alleges that the vehicle was put into the possession of Newfield Motors. It does not allege that it was put into the defendant's possession. Thus, absent an allegation and proof that the vehicle was initially put into defendant's lawful possession, the plaintiff has not made out a case under the second class of conversion. Even if we disregard the parties' agreement that this is conversion under the second class, the plaintiff has not alleged and proved wrongful possession of the car from the outset as required under the first class of conversion.

*Id.* at 396-97. Although *Maroun* does not involve the actions of an attorney or a law firm, it supports the conclusion that a defendant must be alleged to have possessed the property to be the proper defendant in a conversion action. *Id.*; *see also Epstein v. Automatic Enters.*, 6 Conn. App. 484, at 487-88 (Conn. App. Ct. 1986) (distinguishing the two types of conversions based on defendant's *possession* wrongful at the outset and defendant's *possession* that becomes wrongful by virtue of the wrongful detention, use, or "exercise of unauthorized dominion").

In the absence of actual possession, the only possible way to recover for conversion against Eckert Seamans is to show "constructive possession" of the personal property. *See Hartford Ice Co. v. Greenwoods Co.*, 61 Conn. 166 (1891) ("If the defendant never had actual or constructive possession of the property of another, that ends the matter."). "Constructive possession" is defined as "[c]ontrol or dominion over a property without actual possession or custody of it." *Possession - Constructive Possession*, Black's Law Dictionary (10th ed.

14

2014).³ "Dominion" is "control" or "possession." *Dominion*, Black's Law Dictionary (10th ed. 2014). Accordingly, "constructive possession" requires Eckert Seamans to be able to exercise its control over Mr. Vossbrinck's personal belongings notwithstanding the absence of physical custody or actual possession. The Connecticut Supreme Court has defined "constructive possession" under the penal code as "knowingly [having] the power and the intent to exercise dominion or control over personal property," *Conn. Nat. Bank v. Douglas*, 221 Conn. 530, (1992) (relating the penal code definition to a civil action to recover money damages owed on a promissory note and loan).

Indeed, the underlying question in a conversion action is whether the defendant "without authorization, assumes and exercises the *right of ownership* over property belonging to another, to the exclusion of the owner's rights." *See Coleman*, 102 Conn. at 719 (emphasis added); *see Luciani*, 15 Conn. App. at 410 (same). "Ownership" is defined as (1) "[t]he bundle of rights allowing one to use, manage, and enjoy property, including the right to convey it to others"; (2) "the right to possess a thing, regardless of any actual or constructive control." *Ownership*, Black's Law Dictionary (10th ed. 2014). "Ownership rights are general, permanent, and heritable." *Id.* Connecticut case law has expressed a broad understanding of "ownership:

> The term 'owner' is one of general application and includes one having an interest other than the full legal and beneficial title . . . .

---

³ "Possession" is generally defined, in relevant part, as "[t]he fact of having or holding property in one's power; the exercise of dominion over property" or "[t]he right under which one may exercise control over something to the exclusion of all others; the continuing exercise of a claim to the exclusive use of a material object." *Possession*, Black's Law Dictionary (10th ed. 2014).

> **The word owner is of flexible meaning, and it varies from an absolute proprietary interest to a mere possessory right . . . . It is not a technical term and, thus, is not confined to a person who has the absolute right in a chattel, but also applies to a person who has possession and control thereof.**

*Hope v. Cavallo*, 163 Conn. 576, 580–81 (1972) (addressing ownership in the context of Conn. Gen. Stat. § 52-556); *see Deming v. Nationwide Mut. Ins. Co.*, 279 Conn. 745, 770-71 (2006) (applying *Hope* to a conversion action); *Label Sys. Corp. v. Aghamohammadi*, 270 Conn. 291, 329 (2004) (same).

The Complaint does not provide a plausible basis to conclude Accredited's law firm ever had control or exercised *its* right of ownership over Mr. Vossbrinck's personal belongings. For example, there is no indication Eckert Seamans sold or derived any benefit from the sale of Plaintiff's personal belongings, that Eckert Seamans outwardly or publicly asserted its ownership of the personal belongings, or that it otherwise controlled the personal belongings. The most plausible reading of the asserted facts can go in one of two directions: (1) that Plaintiff continued to exercise his right of ownership and constructively possessed the property by intentionally leaving his personal belongings on the premises; or (2) Accredited asserted its ownership over the items by actually possessing them. The actions alleged to have been taken by Eckert Seamans— i.e. facilitate Accredited efforts to complete the foreclosure and obtain unencumbered possession of the promises—merely constitute a claim that Eckert Seamans acted within the scope of an attorney representing its client in a protracted foreclosure and ejectment proceeding. In light of the fact that Eckert Seamans never actually possessed the personal property and the Complaint

16

suggests nothing more than that Eckert Seamans took ministerial actions on behalf of its client, the Court questions whether Eckert Seamans is the proper party defendant.

The Court therefore finds the Complaint presently fails to satisfy Rule 8 of the Federal Rules of Civil Procedure, because it does not clearly set forth facts allowing the Court to draw a reasonable inference that Eckert Seamans ever had actual or constructive possession of Mr. Vossbrinck's personal belongings. *See Iqbal*, 556 U.S. at 678. The Complaint instead indicates Accredited had actual possession the entire time and that Eckert Seamans never had control over the belongings outside its scope of representation for Accredited. Therefore, the Court need not address the statute of limitations issue regarding the sale of his personal belongings because conversion is not properly alleged against this Defendant.

### 2. *Civil Theft*

In Connecticut, civil theft makes liable for treble damages "[a]ny person who steals any property of another, or knowingly receives and conceals stolen property." Conn. Gen. Stat. § 52-564. Civil theft is synonymous with larceny as defined by Conn. Gen. Stat. § 53a-119. *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 44 (2000). Under § 53a-119, a person engages in larceny "when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains, or withholds such property from an owner." Conn. Gen. Stat. § 53a-119.

"The elements of civil theft are [ ] largely the same as the elements to prove the tort of conversion, but theft requires a plaintiff to prove the additional element of intent over and above what he or she must demonstrate to prove conversion." *Sullivan v. Delisa*, 101 Conn. App. 605, 620 (Conn. App. 2007). Specifically, a plaintiff must allege the defendant's intent to permanently deprive plaintiff of his property in order to recover for civil theft. See *Whitaker v. Taylor*, 99 Conn. App. 719, 732 (Conn. App. Ct. 2007); see also *Howard v. MacDonald*, 270 Conn. 111, 129 (2004); see *Deming v. Nationwide Mut. Ins. Co.*, 279 Conn. 745, 771 (2006) (indicating statutory theft is different from conversion on two grounds: (1) it "requires an intent to deprive another of his property"; and (2) conversion requires the owner to be harmed).

For the same reasons that Plaintiff's conversion claim fails, his civil theft claim fails too. See *Kopperl v. Bain*, 23 F. Supp. 3d 97, 109 (D. Conn. 2014) ("If in order to sustain a claim for statutory theft, when coupled with a claim for conversion arising out of the same facts, a plaintiff must prove 'the additional element of intent over and above what he or she must demonstrate to prove conversion,' it necessarily follows that a plaintiff who cannot prove conversion also cannot prove statutory theft."). The Court also cautions Plaintiff that the mere allegation that Defendant *removed* Plaintiff's property fails to allege Defendant Eckert Seamans "acted with the requisite intent to deprive the plaintiff of her property." *Whitaker*, 99 Conn. App. at 732 (Conn. App. Ct. 2007). Although statutory theft does not require a heightened pleading standard, *Milo v. Galante*, No. 3:09cv1389 (JBA), 2011 WL 1214769, at *8 (D. Conn. Mar. 28, 2011), Plaintiff

must allege facts tending to show Defendant's intent to permanently deprive him of the property, *Whitaker*, 99 Conn. App. at 732. Plaintiff has not done so here.

## IV. Conclusion

For the aforementioned reasons, the Court hereby GRANTS Defendant's Motion to Dismiss. This case is DISMISSED without prejudice to refiling within 35 days of the date of this decision an amended complaint that properly asserts a valid claim under state law. Failure to do so will result in a dismissal with prejudice. The Clerk is directed to close this case.

**IT IS SO ORDERED.**

_____/s/_____
Vanessa L. Bryant
United States District Judge

Order dated in Hartford, Connecticut on March 14, 2018.